VENABLE LLP
Gregory J. Sater (SBN 157486)
gsater@venable.com
2049 Century Park East, Suite 2100
Los Angeles, CA  90067
Telephone:   (310) 229-9900
Facsimile:   (310) 229-9901

Attorneys for Defendant
JOHN MILLS, LTD.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOMELAND HOUSEWARES, LLC<br><br>Plaintiff,<br><br>v.<br><br>JOHN MILLS, LTD.<br><br>Defendant. | CASE NO. 13-cv-08754-JAK-CW<br><br>Hon. John A. Kronstadt<br><br>**JOHN MILLS, LTD.'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date:  May 5, 2014<br>Time:  8:30 a.m.<br>Room:  750 |

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

1    TO THE COURT, ALL PARTIES AND COUNSEL OF RECORDS:

2    PLEASE TAKE NOTICE that on May 5, 2014, at 8:30 a.m., or as soon

3    thereafter as the matter may be heard, in Room 750 of the United States District

4    Court for the Central District of California, located at 255 E. Temple Street, Los

5    Angeles, CA 90012, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules

6    of Civil Procedure, Defendant John Mills Ltd ("JML") will and hereby does move

7    the Court to dismiss the Complaint.

8    The Complaint, which alleges copyright and trademark infringement and

9    other claims based on conduct occurring entirely in the United Kingdom, should be

10   dismissed:  (a) under the doctrine of forum non conveniens; (b) for lack of subject

11   matter jurisdiction under the Lanham Act; and (c) for failure to state a claim for

12   copyright infringement or for unfair competition under Cal. Bus. & Prof. Code §

13   17200.

14   This motion is made following a constructive pre-filing conference of

15   counsel pursuant to L.R. 7-3 which took place on March 11, 2014 between Mr.

16   Sater and Mr. Trojan (which could not occur until that date due to personal factors

17   relating to Mr. Sater which delayed the date of the attorneys' conference).  Counsel

18   were unable to reach a resolution.

19   This Motion is based on this Notice of Motion and Motion, the

20   accompanying Memorandum of Points and Authorities, the Declaration of John

21   Mills, all pleadings, records, and papers filed in this action, the argument of

22   counsel, any supplemental memoranda that may be filed by the parties, and such

23   further evidence as the Court may consider at or before the hearing of this Motion.

24

25   Dated:  March 11, 2014            VENABLE LLP
                                       By:  /s/ Gregory J. Sater
26                                          Gregory J. Sater, Esq.
                                       Attorneys for Defendant JOHN
27                                     MILLS, LTD.

28

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

1

# **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................. 1

II.    FACTUAL ALLEGATIONS ............................................................... 2

III.   THE COMPLAINT SHOULD BE DISMISSED UNDER FORUM
       NON CONVENIENS ........................................................................... 4

       A.    Dismissal Standard For Forum Non Conveniens ........................... 5

       B.    United Kingdom Courts are a More Appropriate Forum for this
             Action. ......................................................................................... 6

       C.    The "Private Factors" Require Dismissal ..................................... 7

             1.    All Witnesses and Evidence are Located in Europe. ............... 8

             2.    The U.K. Forum is More Convenient for the Litigants. ........ 10

             3.    Testimony from U.K. Witnesses Are Best Obtained by a
                   U.K. Court. .................................................................. 10

             4.    The U.K. Will Be Better Positioned to Enforce Any
                   Judgment. .................................................................... 11

             5.    This Court Has The Power To Grant This Motion To
                   Dismiss Despite The Forum Selection Clause In The
                   Magic Bullet Contract. .................................................. 12

       D.    The Public Factors Require Dismissal ........................................ 13

             1.    The Citizens, Courts, and Juries of California have
                   Minimal Interest in this Action. ...................................... 13

             2.    A British Court Would Be More Familiar with British
                   Law. ........................................................................... 14

             3.    The Courts of the United Kingdom are Less Congested
                   than the Central District of California. ............................. 15

IV.    THE LANHAM ACT AND § 17200 CLAIMS MUST BE
       DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION ..... 15

       A.    Dismissal Standard For Lack of Subject Matter Jurisdiction ......... 15

       B.    The Lanham Act Claims Must Be Dismissed Because the
             Alleged Infringement Occurred Outside the U.S. and Did Not
             Sufficiently Implicate U.S. Commerce. ...................................... 16

             1.    Any Ruling on the Lanham Act Claims Could Conflict
                   with U.K. Trademark Law. ............................................. 18

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

i

2.  JML is a United Kingdom Corporation and Sold the Product Exclusively in Europe.................................................. 18

3.  JML Had No Intention or Foresight of Harm to U.S. Commerce. .................................................................. 19

C.  The § 17200 Claim Must Be Dismissed for Lack of Subject Matter Jurisdiction.................................................................. 20

V.  THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE COPYRIGHT ACT OR UNDER § 17200 .................................................. 20

A.  Dismissal Standard For Failure To State A Claim.......................... 20

B.  The Complaint Fails to Allege a Claim of Copyright Infringement. .................................................................. 21

C.  The Complaint Fails to Allege a Claim of Unfair Competition Under Cal. Bus. & Prof. Code § 17200.......................... 22

VI.  CONCLUSION.................................................................. 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

ii

# TABLE OF AUTHORITIES

**Page**

## Cases

*Am. Dredging Co. v. Miller*, 510 U.S. 443, 45, 114 S. Ct. 981, 988 (1994) .......... 6

*Am. Home Assurance Co. v. TGL Container Lines*, 347 F. Supp. 2d 749, 765 (N.D. Cal 2004) ................................................................................ 5, 7, 12

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) .............. 20, 21

*Aurora World, Inc. v. Ty Inc.*, 719 F. Supp. 2d 1115, 1165-66 (C.D. Cal. 2009) ...................................................................................................... 23

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570, 127 S. Ct. 1955, 1974 (2007) ................................................................................................ 20, 21

*Cheng v. Boeing Co.*, 708 F.2d 1406, 1410 (9th Cir. 1983) ........................... 5

*Creative Tech., Ltd. v. Aztech System Pte., Ltd.*, 61 F.3d 696, 702 (9th Cir. 1995) ................................................................................................. 7, 11

*Denbicare U.S.A., Inc. v. Toys "R" Us, Inc.*, 84 F.3d 1143, 1152 (9th Cir.1996) .......................................................................................... 23

*Dibdin v. S. Tyneside NHS Healthcare Trust*, No. CV 12-00206 DDP (PLAx), 2013 WL 327324, at *5 (C.D. Cal. Jan. 29, 2013) ......... 7, 8, 14, 15

*Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1119 (9th Cir. 2002) ................... 14

*E.S.S. Entertainment 2000, Inc. v. Rock Star Videos, Inc.*, 444 F. Supp. 2d 1012, 1049 (C.D. Cal. 2006).................................................................. 23

*Fontenberry v. MV Transp., Inc.*, No. 12-cv-01996 TLN-EFB, 2013 WL 6182587, at *3 (E.D. Cal. Nov. 25, 2013)................................................. 22

*Gates v. Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335-36 (9th Cir. 1984) .......... 8

*Gibson Brands Inc. v. Viacom Int'l, Inc.*, No. CV 12-10870 DDP (AJWx), 2013 WL 5940826, at *1 (C.D. Cal. Nov. 5, 2013) ...................... 16, 18, 19

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 504, 67 S. Ct. 839, 91 (1947)........... 5, 11

*Harp v. Airblue Ltd.*, 879 F. Supp. 2d 1069, 1078 (C.D. Cal. 2012)................... 14

*In re Air Crash at Madrid, Spain, on Aug. 20, 2008*, 893 F. Supp. 2d 1020, 1032 (C.D. Cal. 2011)................................................................................ 11

*In re Air Crash Over Taiwan Straits on May 25, 2002*, 331 F. Supp. 2d 1176, 1180 (C.D. Cal. 2004)................................................................... 5, 6

*Kirtsaeng v. John Wiley & Sons, Inc.*, 133 S. Ct. 1351 (2013) ........................... 23

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 1675 (1994).................................................................................. 16

iii

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

*Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 767 (9th Cir. 1991) .................................................................................. 5, 7

*Los Angeles News Serv. v. Reuters Tel. Int'l Ltd.*, 340 F.3d 926, 931 (9th Cir. 2003) .......................................................................................... 21

*Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 612-13 (9th Cir. 2010) ................................................................................................ 16, 17, 20

*Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001) . 5, 6, 7, 8, 13, 14

*McKinnon v. Dollar Thrifty Auto. Grp., Inc.*, No. 12-4457 SC, 2013 WL 791457, at *4-6 (N.D. Cal. Mar. 4, 2013) ...................................... 22

*Mizokami Bros. of Arizona, Inc. v. Baychem Corp.*, 556 F.2d 975, 977 (9th Cir. 1977) .................................................................................. 5

*Neuralstem, Inc. v. ReNeuron, Ltd.*, 365 F. App'x 770, 771 (9th Cir. 2010) ......... 7

*Pinkberry, Inc. v. JEC Int'l Corp.*, No. CV 11-6540 PSG (PJWx), 2011 WL 6101828, at *2 (C.D. Cal. Dec. 7, 2011) ........................................ 16, 19, 20

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257, 102 S. Ct. 235, 256 (1981) 5, 6, 13

*Reebok Int'l Ltd. v. Marnatech Enterprises, Inc.*, 970 F.2d 552, 554 (9th Cir. 1992) .................................................................................. 18

*Royal Bed & Spring Co. v. Famossul Industria e Comercio de Moveis Ltda.*, 906 F.2d 45, 51 (1st Cir. 1990) .................................................. 12

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) ............... 16

*Scott v. Pasadena Unified School Dist.*, 306 F.3d 646, 664 (9th Cir. 2002) ........ 20

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429, 127 S. Ct. 1184, 1190 (2007) ........................................................ 6

*Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*, 769 F.2d 1393, 1395 (9th Cir. 1985) .................................................................................. 16, 17, 18, 19

*Stock West, Inc. v. Confederated Tribes of the Colville Res.*, 873 F.2d 1221, 1225 (9th Cir. 1989) ................................................................ 16

*Subafilms, Ltd. v. MGM-Pathe Comms. Co.*, 24 F.3d 1088, 1099 (9th Cir. 1994) .................................................................................. 21

*Trader Joe's Co. v. Hallatt*, No. C13-768 MJP, 2013 WL 5492515, at *4 (W.D. Wash. Oct. 2, 2013) ...................................................... 17, 19

*White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ...................................... 16

**Statutes**

California Business & Professions Code § 17200 ............................................. 1

Federal Rule of Civil Procedure 12(b)(1) ...................................................... 16

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

**Other Authorities**

Admin. Office of the U.S. Courts, *Federal Court Management Statistics*
(Sept. 2013)................................................................................................ 15

David Robertson, *Forum non conveniens in America and England: "A
Rather Fantastic Friction,"* 103 Law Q. Rev. 398, 417 (1987)................ 15

The Rt. Hon. Sir Robin Jacob et al., *Kerly's Law of Trade Marks and Trade
Names* (2005) (containing 120 years of commentary on British
intellectual property law)........................................................................ 14

**Treatises**

3 David Nimmer & Melville B. Nimmer, Nimmer on Copyright §
12.04(a)(3)(b), at 12-86) ......................................................................... 21

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MOTION TO DISMISS

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant John Mills Ltd ("JML") hereby submits this Memorandum of Points and Authorities in support of its Motion to Dismiss the Complaint of Plaintiff Homeland Housewares, Inc. ("Plaintiff" or "Homeland Housewares").

The Complaint, which alleges copyright and trademark infringement and other claims based on conduct occurring entirely in the United Kingdom, should be dismissed:  (a) under the doctrine of *forum non conveniens*; (b) for lack of subject matter jurisdiction under the Lanham Act; and (c) for failure to state a claim for copyright infringement or for unfair competition under Cal. Bus. & Prof. Code § 17200 *et seq.* ("§ 17200").

## I.   INTRODUCTION

This lawsuit belongs in London, not Los Angeles.   It belongs in London because the crux of Plaintiff's claim is that actions by JML -- *actions that occurred entirely in the United Kingdom* -- supposedly constituted copyright and trademark infringement and resulted in lost sales for Plaintiff in the United Kingdom territory.

Intellectual property laws vary from country to country of course, and the same is true for affirmative defenses like the doctrine of fair use.  It is axiomatic, therefore, that a copyright or trademark case that involves conduct that occurred in the U.K. should be decided *in* the U.K., by a U.K. court that knows and can apply U.K. trademark and U.K. copyright law to the facts after it receives trial testimony from the pertinent witnesses -- *who are all located in the U.K.*

In order to try to litigate this copyright and trademark infringement case on its home turf here in Los Angeles, Plaintiff is bootstrapping its intellectual property infringement claims onto a purported breach of contract claim.

It is true that the parties previously had a contractual relationship.  Plaintiff supplied JML in the U.K. with a Chinese-made blender called the Magic Bullet for JML to sell in the U.K.  The parties agreed that JML could use the Magic Bullet's

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

name and its television infomercial in the U.K. The relationship soured during the recent recession when JML did not sell as many Magic Bullets as the parties would have liked. According to the Complaint, that failure was a breach of contract.

However, that is not where the Complaint ends. The Complaint goes on to allege *copyright and trademark infringement* occurring subsequent to the end of the parties' relationship. Plaintiff claims that JML wrongfully continued to use the Magic Bullet infomercial and Magic Bullet name and that it wrongfully promoted an "infringing blender" on its website *www.jmldirect.com*. This is critical because every witness with knowledge relating to this "infringing" conduct on the website – a website that sells *only* to residents of the U.K. and Ireland – and every witness who might know about the U.K. market for blenders like the Magic Bullet and thus about any lost sales which Plaintiff allegedly suffered from the "infringement" in that market, is a witness who resides not in Los Angeles but in the U.K. Moreover, the law that will determine whether JML's conduct was infringing or was fair use will be the law of the land where the conduct occurred: the U.K. For these reasons JML requests that the case be dismissed so it can be adjudicated where it belongs.

## II.   FACTUAL ALLEGATIONS

In addition to the breach of contract claim which alleges that JML should have sold more Magic Bullets in the U.K., Plaintiff alleges that JML committed "infringement" subsequent to the end of the parties' relationship. (Compl. ¶ 10.) Although Plaintiff attempts to "Americanize" this alleged misconduct by saying that JML's U.K. website is "accessible from" the United States, a careful reading of the Complaint reveals that the "infringing" conduct occurred entirely in the U.K.

The Complaint acknowledges that JML is "a company organized under the laws of the United Kingdom, having its principal place of business at JML House, Regis Road, London, NW53EG, United Kingdom" and that it is "a marketing and distribution company in England of various household products." (Compl. ¶ 2, 6.)

The Complaint then acknowledges that the rights which Plaintiff originally

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

1  gave to JML for the Magic Bullet were not for the United States but were for

2  "parts of Europe." (Compl. ¶ 6.)  It goes on to confirm that, when Plaintiff gave

3  JML the right to use the Magic Bullet's name and infomercial, it was not for the

4  United States but rather for "JML's territory in parts of Europe." (Compl. ¶ 14).

5  　　　Notably, the Complaint never alleges – because it cannot – that JML ever

6  overstepped the geographic boundaries of the parties' original agreement and ever

7  sold *even one blender*, Magic Bullet or otherwise, to anyone in the United States.

8  　　　What the Complaint alleges, in terms of a "United States connection," is that

9  JML's website *www.jmldirect.com*, which sold the Magic Bullet units that JML

10  had bought from Plaintiff, is "accessible from this Judicial District." (Compl. ¶ 9.)

11  　　　What the Complaint neglects to mention, however, is that JML's site does

12  not sell anything to anyone in the United States.  It *only* sells and ships products to

13  residents of the U.K. and Ireland, and accepts payment only in British Pounds or

14  Euros.  Moreover, blenders sold on the site – like the Magic Bullet, previously –

15  are of no interest to anyone in the United States *because they are wired for British*

16  *electrical outlets*. (Decl. ¶ 5.)  Nevertheless, it is true that, like anything else on

17  the Internet, the site is "accessible" from Los Angeles, just as it is from Timbuktu.

18  　　　The only other nexus claimed between the United States and JML's acts of

19  "infringement" is a vague allegation that "JML has conducted business in the

20  United States concerning its new infringing blender product line." (Compl. ¶ 11.)

21  　　　The Complaint nowhere specifies, however, what this "infringing" blender is

22  *or what copyright or trademark rights it allegedly infringes*.  Does it use the Magic

23  Bullet trademark?   Does it use the Magic Bullet infomercial?  Notably, there is no

24  allegation of this kind to be found in the Complaint – because there cannot be.  No

25  other JML blender has used the Magic Bullet name or Magic Bullet infomercial.

26  The Complaint refers to an "infringing" blender without saying what is infringed.

27  　　　Nor does the Complaint explain what "business" JML supposedly has done

28  in the United States "concerning" JML's new "infringing" blender.  Plaintiff does

V E N A B L E  L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

MOTION TO DISMISS

not allege that any sales have occurred in the United States.  All Plaintiff says is that JML has "promoted" a new "infringing" blender "at trade shows in the United States" and that, "on information and belief, [JML] has offered to sell such new infringing products … while JML representatives were physically present in the United States and using American telecommunications to promote such infringing sales, and using internet communications such as youtube.com to facilitate JML's infringement of Homeland's trademarks and copyright." (Compl. ¶ 8.)

Again, however, as noted, the Complaint never states what is "infringing" about this "other blender."  The Complaint does not even identify what trademarks or copyrights of Plaintiff supposedly are "infringed" by the blender.  As a result, there continues to be no nexus between the United States and any conduct by JML that could constitute copyright or trademark infringement, even as alleged.

Finally, the Complaint alleges that JML violated Plaintiff's trademark rights by putting JML's name on Magic Bullet packaging during the time period when it sold the units it had bought from Plaintiff.  (Compl. Ex. 1 ¶ 9.1; Compl. ¶ 9.) Putting aside the fact that this labeling was expressly permitted by the parties' distribution agreement (see Compl. Ex. 1 ¶ 9.1-9.2 and Compl. ¶ 8, 9, 14), even Plaintiff cannot deny that all such conduct by JML occurred *entirely in the U.K.*

In short, the only specific allegations made in the Complaint for trademark or copyright infringement allege infringing conduct *in the U.K.* either on the U.K. direct-to-consumer website *www.jmldirect.com* or on packaging used in the U.K.

## III.   THE COMPLAINT SHOULD BE DISMISSED UNDER FORUM NON CONVENIENS

This action concerns the distribution of Chinese-made consumer products in the United Kingdom by a British corporation, directed by British businesspersons, advertised on British television, distributed in British retail stores, and shipped on a direct-to-consumer basis to British addresses only, in return for payment in British Pounds or Euros.  All sales, whether of the Magic Bullet or of the new blender that

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

is vaguely referenced in the Complaint as being "infringing," occurred in the U.K. For this reason, the question of whether JML's conduct constituted copyright or trademark infringement will be decided by U.K. law. For that reason, and for the additional pragmatic reason that all or nearly all of the witnesses, both on liability and on damages, are residents of the U.K., the case should be adjudicated there.

## A.   Dismissal Standard For Forum Non Conveniens

A complaint requires dismissal under the doctrine of *forum non conveniens* "where litigation in a foreign forum would be more convenient for the parties." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 504, 67 S. Ct. 839, 91 (1947)). Accordingly, "[t]he *forum non conveniens* determination is committed to the sound discretion of the trial court" and "its decision deserves substantial deference." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257, 102 S. Ct. 235, 256 (1981); *Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 767 (9th Cir. 1991); *see also Mizokami Bros. of Arizona, Inc. v. Baychem Corp.*, 556 F.2d 975, 977 (9th Cir. 1977) ("Application of the *forum non conveniens* doctrine affords wide discretion to the district court.").

Dismissal is appropriate where "defendants have made a clear showing of facts which establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience, which may be shown to be slight or nonexistent." *In re Air Crash Over Taiwan Straits on May 25, 2002*, 331 F. Supp. 2d 1176, 1180 (C.D. Cal. 2004) (quoting *Cheng v. Boeing Co.*, 708 F.2d 1406, 1410 (9th Cir. 1983)).

A motion to dismiss based on *forum non conveniens* "is not a motion to dismiss for improper venue" under Rule 12(b)(3). *Am. Home Assurance Co. v. TGL Container Lines*, 347 F. Supp. 2d 749, 765 (N.D. Cal 2004). Rather, the doctrine is "a supervening venue provision, permitting displacement of the ordinary rules of venue when, in light of certain conditions, the trial court thinks

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

1  that jurisdiction ought to be declined." *Sinochem Int'l Co. v. Malaysia Int'l*

2  *Shipping Corp.*, 549 U.S. 422, 429, 127 S. Ct. 1184, 1190 (2007) (quoting *Am.*

3  *Dredging Co. v. Miller*, 510 U.S. 443, 45, 114 S. Ct. 981, 988 (1994)).

4        Consequently, a district court should consider affidavits and documents

5  beyond the pleadings when considering a motion under *forum non conveniens*. *See*

6  *Piper*, 454 U.S. at 258-59 (considering affidavits); *In re Air Crash Over Taiwan*

7  *Straits*, 331 F. Supp. 2d at 1184 (finding declarations to be "generally considered

8  sufficient evidence" for elements of *forum non conveniens* analysis). However,

9  such materials need only "provide enough information to enable the District Court

10 to balance the parties' interests," as "[r]equiring extensive investigation would

11 defeat the purpose of [such a] motion." *Piper*, 454 U.S. at 258.

   **B.    United Kingdom Courts are a More Appropriate Forum for this**
12

13       **Action.**

14       A court must dismiss an action under the doctrine of *forum non conveniens*

15 when it determines that an adequate alternative forum is available and that the

16 balance of public and private factors favors dismissal. *See Lueck v. Sundstrand*

17 *Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001) (citing *Piper Aircraft Co. v. Reyno*,

18 454 U.S. 235, 254 n.22, 102 S. Ct. 252 (1981)). An adequate forum generally

19 exists wherever "defendant is amenable to service of process." *Id.* at 1143.

20       Her Majesty's Courts of Justice of England and Wales provide a more

21 appropriate forum for this action. JML is an English company duly organized

22 under the laws of England with its principal place of business in England. (Decl. ¶

23 2.) JML consents to service of process in the U.K. (Decl. ¶ 3). Indeed, JML has

24 already been served in England in this action by an agent of Her Majesty's Courts

25 and Tribunals acting under the Hague Service Convention. (Decl. ¶ 3.) Moreover,

26 as the historic source of American common law, the U.K. has routinely been found

27 to be an adequate forum for actions in tort and contract. *See Dibdin v. S. Tyneside*

28 *NHS Healthcare Trust*, No. CV 12-00206 DDP (PLAx), 2013 WL 327324, at *5

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

MOTION TO DISMISS

1  (C.D. Cal. Jan. 29, 2013) ("This court is not aware of any Ninth Circuit case that

2  has found England inadequate, but there are a number finding England adequate.

3  *See, e.g., Am. Home Assurance Co. v. TGL Container Lines, Ltd.*, 347 F. Supp. 2d

4  749, 765 (N.D. Cal. 2004); *Neuralstem, Inc. v. ReNeuron, Ltd.*, 365 F. App'x 770,

5  771 (9th Cir. 2010) (unpublished).").

6       Even in cases involving violations of United States law, the Ninth Circuit

7  has endorsed dismissals on the grounds of *forum non conveniens* where the foreign

8  forum arguably would be better able to provide an adequate remedy, in judgment

9  enforcement, due to a defendant residing there.  *See Creative Tech., Ltd. v. Aztech*

10  *System Pte., Ltd.*, 61 F.3d 696, 702 (9th Cir. 1995) (holding, under adequacy of

11  forum analysis, that a court in the home nation of the defendant was more able to

12  enforce an injunction under the U.S. Copyright Act); *Lockman*, 930 F.2d at 768-69.

13  **C.**    **The "Private Factors" Require Dismissal.**

14       A court must dismiss a Complaint on grounds of *forum non conveniens*

15  when the "balance of conveniences suggests that trial in the chosen forum would

16  be unnecessarily burdensome for the defendant or the court." *Lueck*, 236 F.3d at

17  1145 (quoting *Lockman*, 930 F.2d at 767).  Courts should consider both "private"

18  and "public" factors when making such a determination. *See id.*

19       There are seven "private" factors.  They are as follows:  "(1) the residence

20  of the parties and the witnesses; (2) the forum's convenience to the litigants; (3)

21  access to physical evidence and other sources of proof; (4) whether unwilling

22  witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6)

23  the enforceability of the judgment; and (7) all other practical problems that make

24  trial of a case easy, expeditious, and inexpensive." *Lueck*, 236 F.3d at 1145.

25       Plaintiff is the only party located in the United States, and none of Plaintiff's

26  handful of U.S.-based witnesses will be able to provide any material information

27  regarding the nature, extent, and consumer- or market- impact of the "infringing"

28

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

conduct of JML, because all of that conduct occurred in the U.K. at the hands of people working for JML in the U.K., impacting consumers and sales in the U.K.

Because all of the key witnesses and documents are located in Europe and any lost sales or other market damage caused by JML's purported "infringement" occurred there, the "private" factors favor dismissal. *See Dibdin v. S. Tyneside NHS Healthcare Trust*, No. CV 12-00206 DDP (PLAx), 2013 WL 327324, at *5 (C.D. Cal. Jan. 29, 2013) ("Generally, the private factors will weigh in favor of a foreign forum when essentially all the events giving rise to a suit occur there.").

### 1.   All Witnesses and Evidence are Located in Europe.

With the sole exception of a handful of witnesses who work for Plaintiff and who can be expected to testify at trial about the ownership and commercial success of Plaintiff's Magic Bullet trademark and television infomercial, all the witnesses and all the relevant documents in this case are in the U.K.  This is critical because the role of a court on a motion to dismiss for *forum non conveniens* is to consider the "materiality and importance of the anticipated evidence and witnesses' testimony and then determine their accessibility and convenience to the forum." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1146 (9th Cir. 2001) (citing *Gates v. Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335-36 (9th Cir. 1984).  Here, the information that is material to Plaintiff's infringement claims will come not from Plaintiff, but from JML and others who know the ins and outs of the U.K. market for blenders and what, if any, impact the "infringing" activities of JML had there.

JML only sold the Magic Bullet "within a limited territory in Europe." (Compl. ¶ 6).  It never sold it, or any other blender, to anyone in the United States. (Decl. ¶ 6.)  Because any "infringement" of Plaintiff's intellectual property rights therefore would have occurred in Europe by definition, then any percipient witness to the nature and scope of that infringement, and any percipient or expert witness who would know of any consumer confusion or of any financial harm to Plaintiff in the territory caused by said infringement, would be a witness located in Europe.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

1      Everyone involved in the performance or alleged breach of the distribution

2 agreement with Plaintiff is located in the U.K., and the same is true of everyone

3 involved in the alleged copyright and trademark infringement of JML that followed

4 the alleged breach. (Decl. ¶ 13-15, 17-18.) Dozens of JML employees and others

5 located in the U.K. have percipient knowledge of JML's marketing and sale in the

6 U.K. of the Magic Bullet product, or knowledge of JML's marketing and sale in

7 the U.K. of the other "infringing" blender that is vaguely referenced in Plaintiff's

8 Complaint, or knowledge of the U.K. intellectual property rights that exist, or do

9 not exist, for those blenders, or knowledge of the reasons why JML did not commit

10 copyright or trademark infringement according to U.K. law when it used the Magic

11 Bullet name and the Magic Bullet infomercial to promote and sell the Magic Bullet

12 units that had been sold to it by Plaintiff. (Decl. ¶ 13-31). Facts surrounding the

13 modification and display of Plaintiff's intellectual property are best sought from

14 the U.K. residents who received these materials from Plaintiff and oversaw the

15 distribution of the product in the U.K. with the permission of Plaintiff. (Decl. ¶ 15,

16 19-22, 25-26, 31.) Similarly, as the heart of this case is alleged infringement in

17 Europe, the witnesses with the most pertinent knowledge of the European sales of

18 the product – the central factual issue – all will be necessarily found in Europe.

19 (Decl. ¶ 16, 23-24, 27-31.) Some of these people now are no longer employed by

20 JML and, thus, would require compulsion to testify. (Decl. ¶ 18, 22, 29, 30, 40).

21      Also in Europe and outside of JML's control are individuals with knowledge

22 of the European market demand for this kind of product, including the company

23 which preceded JML in trying to sell Plaintiff's Magic Bullet blender in Europe

24 (Decl. ¶ 38-40), the company which now has succeeded JML in trying to sell the

25 Magic Bullet in Europe (Decl. ¶ 33-34), and other companies which have sold or

26 tried to sell other similar blenders in Europe. (Decl. ¶ 35-37.) These individuals,

27 and probably others from several other European companies, will be needed at the

28 time trial to testify for JML as to damages issues such as Plaintiff's lost sales and

1   damages, if any.  These people are outside the United States and JML will have no

2   means of compelling them to come to trial in the U.S. to testify in defense of JML.

3          Documents pertaining to Plaintiff's claims will be found at the offices of

4   JML in London and at the offices of many nonparties there and throughout Europe.

5   Records of communication surrounding the parties' agreement are in London

6   (Decl. ¶ 9) and records concerning the distribution, advertising, and marketing of

7   the Magic Bullet and of the allegedly "infringing" items are at the offices of JML

8   and of non-party companies doing business with JML in the U.K. such as retailers.

9   (Decl. ¶ 9.)

10           2.    The U.K. Forum is More Convenient for the Litigants.

11          The United Kingdom would be a more convenient forum for JML and would

12   not be a grossly inconvenient forum for Plaintiff.  JML is a British retailer.  (Decl.

13   ¶ 2.) JML will be forced to present many officers and employees for the purposes

14   of discovery, and at trial.  Doing so in Los Angeles would be terribly inconvenient

15   and could shut JML's business down for a material period of time, causing great

16   harm to JML.   Conversely, only two or three people from Plaintiff ever interacted

17   with JML.  (Decl. ¶ 10).  Some of these interactions occurred in Europe, where

18   Plaintiff's representatives travel for trade shows and for other reasons.  Plaintiff is

19   a very financially successful company, with sales all over the world and, in this

20   case, with Magic Bullet sales in the U.K. via a distributor that preceded JML, then

21   sales via JML, and now more recently sales with another distributor that succeeded

22   JML.  There is no reason why Plaintiff's representatives could not attend a trial in

23   London, particularly in a case that arises out of business activities that were in the

24   U.K. market and that damaged, if at all, sales within that territory.  (Decl. ¶ 10.)

25           3.    Testimony from U.K. Witnesses Are Best Obtained by a U.K.

26                Court.

27          Because all of the witnesses and conduct at issue are located in the United

28   Kingdom and Europe, if the case is litigated in Los Angeles the parties will be

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

MOTION TO DISMISS

forced to rely on letters rogatory pursuant to the Hague Convention on the Taking of Evidence Abroad to establish the facts and to conduct discovery.  This process is known to be "notoriously inefficient" and has been described as "a difficult and time-consuming—if not altogether futile—endeavor" which, even if it could lead to a very limited number of percipient witness depositions, would not allow either party "to compel live testimony at trial."  *In re Air Crash at Madrid, Spain, on Aug. 20, 2008*, 893 F. Supp. 2d 1020, 1032 (C.D. Cal. 2011), *amended by* No. 2:10-ml-02135 GAF (RZx), 2011 WL 2183972 (C.D. Cal. May 16, 2011).

This would be extremely damaging and prejudicial to JML at trial, if not outcome-determinative to the detriment of JML, because all of the critical defense witnesses are located in Europe with jobs and families requiring their presence in Europe, and some of them are not even employed by JML and therefore cannot be compelled to come to trial to testify either with regard to the breach of contract claim or the copyright and trademark infringement claims.  (Decl. ¶ 33-43.)  While the Hague Convention provides a mechanism, however disfavored, for obtaining depositions in foreign countries, it does not allow a party such as JML to compel a nonparty to testify at trial.  *See In re Air Crash at Madrid*, 893 F. Supp. 2d at 1032.

Holding a trial at a location "where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants." *Id.* (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511, 67 S. Ct. 839, 844 (1947)).   Plaintiff would suffer comparatively little harm from having the case tried in London, while for the reasons noted, JML likely would suffer an outcome-determinative loss of evidence.

4.   The U.K. Will Be Better Positioned to Enforce Any Judgment.

The Complaint seeks injunctive relief concerning a British corporation's U.K. sales of goods imported into the U.K. from China.  (Compl. ¶ 25, 34, 40, 44.)  The Ninth Circuit has held that, in such cases, litigation in a foreign forum is more appropriate. *See Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 702

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

11

MOTION TO DISMISS

1  (9th Cir. 1995) ("Indeed, we are unable to conceive of a more effective means of

2  protecting [Plaintiff's] United States copyright interests than by shutting off the

3  pipeline of infringing goods at the source.").  As JML sells blenders only to its

4  British and Irish market, the U.K. would be better positioned than the United States

5  to enforce a judgment against a company operating within the borders of the U.K.

6           5.      This Court Has The Power To Grant This Motion To Dismiss

7                   Despite The Forum Selection Clause In The Magic Bullet

8                   Contract.

9        At one time, these parties had an operative distribution agreement in place

10  relating to the Magic Bullet.  In that now-terminated agreement, there was a venue

11  clause which provided for Los Angeles as the forum for disputes that arose out of

12  the contract.  As a matter of law, however, this Court nevertheless has the complete

13  authority and judicial power to dismiss Plaintiff's action on the grounds of *forum*

14  *non conveniens*; and this Court should do so for the reasons set forth in this brief.

15       More specifically, this Court has the power to dismiss Plaintiff's action

16  because, under prevailing law, "the presence of a forum selection provision in a

17  contract—even a mandatory one—is 'simply one of the factors that should be

18  considered and balanced' in the ordinary *forum non conveniens* analysis."  *Am.*

19  *Home Assurance Co. v. TGL Container Lines*, Ltd., 347 F. Supp. 2d 749, 768

20  (N.D. Cal. 2004) (citing *Royal Bed & Spring Co. v. Famossul Industria e*

21  *Comercio de Moveis Ltda.*, 906 F.2d 45, 51 (1st Cir. 1990)).  "[E]ven a mandatory

22  forum selection clause does not necessarily give rise to a conclusive presumption

23  that this court is a convenient forum for litigating plaintiffs' claims."  *Id.*

24       The presence of the Los Angeles venue clause in the parties' now-terminated

25  contract is only one factor in the analysis, in other words, and it is a factor that is to

26  be balanced against the tremendous inconvenience to JML and to the witnesses

27  whose testimony would be needed by JML at trial, not to mention the burden on

28  this Court and on the citizens of this Judicial District who would sit on the jury in

V E N A B L E  L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

1    this case to hear about allegedly "infringing" conduct that occurred in the U.K. and

2    that allegedly caused harm to Plaintiff's Magic Bullet blender sales within the U.K.

3        Even just considering the breach of contract claim, it is clear that litigating

4    the claim in Los Angeles would pose a potentially outcome-determinative burden

5    on JML, due to the company having to bring so many of its employees to the U.S.

6    for the trial, not to mention being unable to compel the non-employee witnesses to

7    come, while litigating it in London would pose a far smaller burden on Plaintiff.

8    But there also are serious copyright and trademark infringement claims, based on

9    conduct which JML allegedly committed in the U.K. after the alleged termination

10    of the parties' business relationship on the Magic Bullet.  If one believes Plaintiff,

11    then JML committed such infringement on JML's U.K.-only direct-to-consumer

12    website which sold the Magic Bullet and committed it on JML's U.K.-only product

13    packaging for the Magic Bullet, and then subsequently committed even further

14    "infringement" with a new blender that Plaintiff vaguely alleges to be "infringing."

15    These intellectual property infringement claims and the defenses that apply to them

16    such as fair use are even more complicated than the contract claim and will require

17    many witnesses and documents, all of which are in the U.K.; these claims do not

18    arise from the parties' terminated Magic Bullet contract but, as Plaintiff concedes,

19    they all arise "*after termination* of the Distribution Agreement" (emphasis added).

20    (Compl. ¶ 10.)  All the witnesses, and the law that applies, will be U.K.-located.

21        **D.**    **The Public Factors Require Dismissal**

22        The public interest factors to be considered include (1) local interest in the

23    lawsuit, (2) the court's familiarity with governing law, (3) the burden on local

24    courts and juries, (4) the congestion of the Court, and (5) the costs of resolving a

25    dispute unrelated to this forum.  *See Lueck v. Sundstrand Corp.*, 236 F.3d 1137,

26    1147 (9th Cir. 2001) (citing *Piper Aircraft v. Reyno*, 454 U.S. 235, 259-61 (1981)).

27        1.    The Citizens, Courts, and Juries of California have Minimal

28            Interest in this Action.

1    Where a state has no articulable connection to an action beyond simply the

2    fact of the plaintiff's residency in the state, the court should give strong weight to

3    the foreign forum's interests. *See Dibdin v. S. Tyneside NHS Healthcare Trust*,

4    No. CV 12-00206 DDP (PLAx), 2013 WL 327324, at *5 (C.D. Cal. Jan. 29, 2013)

5    (finding the Plaintiff's California residency unavailing where "England has a very

6    strong interest in this case…[because] the events giving rise to Plaintiff's claims

7    occurred there.").

8    While the people of California have a natural interest in the enforcement of

9    their laws they have no interest in the application of foreign law to foreign conduct.

10   Litigating this case in America may deprive the British defendant of defenses and

11   of remedies arising under the British law that governs the British conduct at issue.

12   The people of the United Kingdom have a significant interest in the application of

13   British intellectual property law to British commerce, and that is an interest which

14   far outweighs California's.  Further, litigating this complex case in California will

15   necessarily create a substantial burden on local courts and juries disproportionate

16   to whatever convenience the Plaintiff may derive. *See Lueck*, 236 F.3d at 1147

17   ("Because the local interest in this lawsuit is comparatively low, the citizens of

18   [this State] should not be forced to bear the burden of this dispute.").

19   2.    A British Court Would Be More Familiar with British Law.

20   Because this case concerns the British sales of British products via British

21   marketing channels, the United Kingdom has the strongest interest in this case and,

22   at least as to the copyright and trademark infringement claims, U.K. law will apply.

23   *See Harp v. Airblue Ltd.*, 879 F. Supp. 2d 1069, 1078 (C.D. Cal. 2012) (citing *Dole

24   Food Co., Inc. v. Watts*, 303 F.3d 1104, 1119 (9th Cir. 2002)) (applying

25   California's "governmental interest" test); *Dibdin*, 2013 WL 327324, at *6 ("Since

26   England's interests are greater than California's, English law is likely govern many

27   of Plaintiff's claims.").  Courts in the United Kingdom are necessarily better versed

28   in British intellectual property laws than courts in the United States. *See generally*,

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

14

The Rt. Hon. Sir Robin Jacob et al., *Kerly's Law of Trade Marks and Trade Names* (2005) (containing 120 years of commentary on British intellectual property law).

> 3.   The Courts of the United Kingdom are Less Congested than the Central District of California.

The Courts of the United Kingdom are better positioned than the Central District of California to expeditiously resolve this case. *See Dibdin*, 2013 WL 327324, at *7 ("This case turns on events…that occurred in England.  That forum should bear the burden and costs of Plaintiff's suit.").

The Central District of California is the fourth-busiest District on the nation, with 13,242 cases pending as of 2013.  *See* Admin. Office of the U.S. Courts, *Federal Court Management Statistics* (Sept. 2013).  Each judgeship is currently responsible for an average of 473 pending cases.  *See id.*  By contrast, "England's courts are simply not that crowded, and the kind of transnational litigations that does tend to flow to England is highly desirable stuff."  David Robertson, *Forum non conveniens in America and England: "A Rather Fantastic Friction,"* 103 Law Q. Rev. 398, 417 (1987).

## IV.   THE LANHAM ACT AND § 17200 CLAIMS MUST BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

If this Court were to decide not to dismiss the case on the grounds of *forum non conveniens*, then this Court nonetheless would lack subject matter jurisdiction over Plaintiff's Lanham Act claims because JML never sold the Magic Bullet nor any other "infringing" blender in the United States.  It is axiomatic that a U.S. court cannot exercise subject matter jurisdiction over a Lanham Act claim where the conduct at issue occurred outside the United States and did not implicate U.S. commerce in a material way.  In addition, this Court must dismiss the § 17200 claim because the commerce at issue occurred beyond the borders of California.

### A.   Dismissal Standard For Lack of Subject Matter Jurisdiction

A court must dismiss a claim under Rule 12(b)(1) when it does not have

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

1   jurisdiction over the subject matter of the claim.  Fed. R. Civ. P. 12(b)(1).  Federal

2   courts are "presumed to lack jurisdiction in a particular case unless the contrary

3   affirmatively appears."  *Stock West, Inc. v. Confederated Tribes of the Colville*

4   *Res.*, 873 F.2d 1221, 1225 (9th Cir. 1989).  Accordingly, "the plaintiff bears the

5   burden of establishing the jurisdiction it asks the court to invoke."  *Gibson Brands*

6   *Inc. v. Viacom Int'l, Inc.*, No. CV 12-10870 DDP (AJWx), 2013 WL 5940826, at

7   *1 (C.D. Cal. Nov. 5, 2013); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*,

8   511 U.S. 375, 377, 114 S. Ct. 1673, 1675 (1994).  A party may challenge subject

9   matter jurisdiction both facially and factually.  *See Pinkberry, Inc. v. JEC Int'l*

10  *Corp.*, No. CV 11-6540 PSG (PJWx), 2011 WL 6101828, at *2 (C.D. Cal. Dec. 7,

11  2011) (citing *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir.

12  2004)).  A court may consider extrinsic evidence when considering a motion under

13  Rule 12(b)(1).  *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

   B.    **The Lanham Act Claims Must Be Dismissed Because the Alleged**
14
         **Infringement Occurred Outside the U.S. and Did Not Sufficiently**
15
         **Implicate U.S. Commerce.**
16

17        This Court cannot exercise subject matter jurisdiction over a Lanham Act

18  claim where the alleged infringement occurred outside the United States and did

19  not sufficiently implicate U.S. commerce.  *See Star-Kist Foods, Inc. v. P.J. Rhodes*

20  *& Co.*, 769 F.2d 1393, 1395 (9th Cir. 1985).  The Ninth Circuit holds that "[f]or

21  the Lanham Act to apply extraterritorially: (1) the alleged violations must create

22  some effect on American foreign commerce; (2) the effect must be sufficiently

23  great to present a cognizable injury to the plaintiffs under the Lanham Act; and (3)

24  the interests of and links to American foreign commerce must be sufficiently

25  strong in relation to those of other nations to justify an assertion of extraterritorial

26  authority."  *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 612-13 (9th Cir.

27  2010) (citing *Star-Kist Foods*, 769 F.2d at 1395).

28        Plaintiff has failed to plead facts sufficient to meet any of the three necessary

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

16

MOTION TO DISMISS

factors to extend the Lanham Act to extraterritorial conduct.  In order for the first two criteria to be met Plaintiff must demonstrate some directly connected monetary harm in the United States.  *See Love*, 611 F.3d at 613 (finding allegations of lost ticket sales in the United States "too great of a stretch" when infringing material had been distributed solely in the United Kingdom).  Here, the purported violations of Plaintiff's trademarks are all alleged to have occurred in Europe.  (Compl. ¶ 6.)  JML has never shipped a Magic Bullet to the United States (Decl. ¶ 6).  Indeed, such a shipment would prove useless given the incompatibility between British appliances and American electrical circuits.  (Decl. ¶ 7.)  Whatever harm occurred from the "infringement" had to have occurred, if at all, in the U.K. sales territory.  In addition, this is not a counterfeiting case.  JML's Magic Bullets were genuine: JML bought them all from Plaintiff.  (Decl. ¶ 11.)  Finally, if there is an argument made by Plaintiff that its "goodwill" in the U.S. somehow was damaged by JML's conduct in the U.K., the response is that it has been held that "'goodwill' related harm is too tenuous to support a cognizable Lanham Act claim when all infringing conduct is abroad."  *Trader Joe's Co. v. Hallatt*, No. C13-768 MJP, 2013 WL 5492515, at *4 (W.D. Wash. Oct. 2, 2013) (citing *Love*, 611 F.3d at 613).

The third factor considers whether American interests in the case rise to a high enough level to justify exertion of judicial authority into foreign commerce.  *See Star-Kist*, 769 F.2d at 1395.  This case about a blender sold by thirty-minute television infomercials really does not warrant the intrusion of an American court into British intellectual property or commercial affairs.  Each of the U.S. interest factors demonstrates the quintessentially foreign nature of this controversy.[1]

---

[1] The factors to be considered are: "(1) the degree of conflict with foreign law or policy, (2) the nationality or allegiance of the parties and the locations or principal places of business of corporations, (3) the extent to which enforcement by either state can be expected to achieve compliance, (4) the relative significance of effects on the United States as compared with those elsewhere, (5) the extent to which there is an explicit purpose to harm or affect American commerce, (6) the foreseeability of such effect, and (7) the relative importance to the violations

(continued…)

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

1.  <u>Any Ruling on the Lanham Act Claims Could Conflict with
U.K. Trademark Law.</u>

A Court should decline to extend jurisdiction into extraterritorial affairs where it would potentially conflict with foreign intellectual property law.  *See Star-Kist*, 769 F.2d at 1396; *Gibson Brands Inc. v. Viacom Int'l, Inc.*, No. CV 12-10870 DDP (AJWx), 2013 WL 5940826, at *4 (C.D. Cal. Nov. 5, 2013).  ("[A]n order by this court concerning use of the same designs in the UK creates a risk of conflict with further UK trademark proceedings on the designs.").  The use, including fair use, of Plaintiff's trademarks on U.K. soil is governed by U.K. trademark law.  Any ruling on the merits of Plaintiff's trademarks could conflict with U.K. law.

2.  <u>JML is a United Kingdom Corporation and Sold the Product
Exclusively in Europe.</u>

JML's wholly foreign nationality removes it from the extraterritorial scope of the Lanham Act.  While courts in the Ninth Circuit occasionally have extended Lanham Act claims to foreign commerce, they have done so when the infringing conduct has been directed by an American resident or citizen. *See Reebok Int'l Ltd. v. Marnatech Enterprises, Inc.*, 970 F.2d 552, 554 (9th Cir. 1992) (finding extraterritorial jurisdiction appropriate where American resident directed Mexican sales with knowledge that infringing products frequently crossed the border into the United States).  Conversely, where the defendant has been a foreigner who "does not appear to have meaningful relevant operations in the United States…[t]his factor weighs against exercising extraterritorial jurisdiction." *Gibson*, 2013 WL 5940826, at *5.

Similarly, the third factor, dealing with compliance with a court order, "has

_____

(continued)

charged of conduct within the United States as compared with conduct abroad." *Star-Kist*, 769 F.2d at 1395.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

generally been analyzed...as how strong a foreign defendant's presence is in the United States." *Trader Joe's*, 2013 WL 5492515, at *6. JML is a U.K. company that has never shipped the Magic Bullet product to any United States address. (Decl. ¶ 2, 6.) JML has derived no revenue from any U.S. sales of the Magic Bullet and JML has never marketed the Magic Bullet product in the United States. (Decl. ¶ 6.) These factors militate against the exercise of jurisdiction in this case.

Similarly, the fourth factor favors dismissal where the products in question do not enter the United States. Where the commerce is abroad, "the effect on the United States is relatively insignificant as compared with the effect on foreign countries." *Pinkberry, Inc. v. JEC Int'l Corp.*, No. CV 11-6540 PSG (PJWx), 2011 WL 6101828, at *6 (C.D. Cal. Dec. 7, 2011) (citing *Star-Kist*, 769 F.2d at 1396); *see also Gibson*, 2013 WL 5940826, at *5 (declining to exercise jurisdiction where United Kingdom company sold products in the United Kingdom and other countries, "with none sold in the United States."). As noted above, JML has not accepted a single order to a United States address. (Decl. ¶ 6.).

3.      JML Had No Intention or Foresight of Harm to U.S. Commerce.

JML has never had any, and Plaintiff cannot demonstrate any, intent to harm any U.S. commerce. JML is in the business of selling household products to people in the U.K. sales territory where JML is located. (Decl. ¶ 2.) Five years ago JML entered into a short term distribution agreement with Plaintiff to import the Magic Bullet from China and market it in the U.K. (Compl. ¶ 6.) JML for a period of time purchased this one product from Plaintiff. (Compl. ¶ 7; Decl. ¶ 11.) As a bona fide reseller of this product in the U.K., hopefully for a profit to JML, JML obviously sought to increase sales of the Magic Bullet, not decrease sales, let alone affect in any way sales on the other side of the Atlantic Ocean in the U.S.

Accordingly, the remaining factors favor dismissal of the Lanham Act claims.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

C.      **The § 17200 Claim Must Be Dismissed for Lack of Subject Matter Jurisdiction.**

Because the Lanham Act claims must be dismissed for lack of subject matter jurisdiction, the §17200 claims must be too.  "When a federal claim is dismissed for lack of subject matter jurisdiction, a court has no discretion to retain supplemental jurisdiction over state law claims." *Pinkberry*, 2011 WL 6101828, at *8 (citing *Scott v. Pasadena Unified School Dist.*, 306 F.3d 646, 664 (9th Cir. 2002)).  Plaintiff's unfair competition claim under §17200 relies on the same "trademark and trade dress infringement" (Compl. ¶ 43) as its Lanham Act claim.  Where a federal court's subject matter jurisdiction over a Lanham Act claim is found inadequate, the derivative state law claims should be dismissed as well.  *See Love*, 611 F.3d at 613-14 (affirming that § 17200 claim "could not survive if the Lanham Act and publicity claims failed"); *Pinkberry*, 2011 WL 6101828, at *8.

V.      **THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE COPYRIGHT ACT OR UNDER § 17200**

The Complaint fails to state a claim under the Copyright Act or under §17200.  The Complaint does not allege any conduct falling within the limited territorial scope of the Copyright Act, nor within the even more limited territorial reach of California's §17200.  Plaintiff has done little more than recite the elements of a claim and has failed to allege infringement within the United States.

A.      **Dismissal Standard For Failure To State A Claim**

For a complaint to survive Rule 12(b)(6), it must set forth "sufficient factual matter" to state "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570, 127 S. Ct. 1955, 1974 (2007)).  To satisfy this standard, a plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  A complaint does not

1   state a plausible claim to relief by merely offering a "formulaic recitation of the

2   elements of a cause of action," or by making "naked assertions devoid of further

3   factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

4   "Threadbare recitals of the elements of a cause of action, supported by mere

5   conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*,

6   550 U.S. at 555). If the face of a pleading does not state a plausible claim, it

7   should be "exposed at the point of minimum expenditure of time and money by the

8   parties and the court." *Twombly*, 550 U.S. at 558.

9   **B.      The Complaint Fails to Allege a Claim of Copyright Infringement.**

10  A claim of Copyright Infringement should be dismissed where it fails to

11  allege an act of infringement within the United States. *See Los Angeles News Serv.*

12  *v. Reuters Tel. Int'l Ltd.*, 340 F.3d 926, 931 (9th Cir. 2003); *Subafilms, Ltd. v.*

13  *MGM-Pathe Comms. Co.*, 24 F.3d 1088, 1099 (9th Cir. 1994) ("[A]cts of

14  infringement that are not cognizable under the United States copyright laws

15  because they occur entirely outside of the United States do[] not state a claim for

16  infringement under the Copyright Act."). Indeed, it is an "undisputed axiom that

17  the United States' copyright laws have no application to extraterritorial

18  infringement." *Subafilms*, 24 F.3d at 1095 (citing 3 David Nimmer & Melville B.

19  Nimmer, Nimmer on Copyright § 12.04(a)(3)(b), at 12-86).

20  The Complaint, which limits its copyright claim to the alleged infringement

21  of one infomercial (Compl. ¶ 28), makes no allegations of any infringement within

22  the borders of the United States. Plaintiff's only factual allegations reference "the

23  display of advertising and Homeland infomercials on the Internet accessible in this

24  Judicial District" and allege that "JML has modified Homeland's MAGIC

25  BULLET infomercial by including JML's own logo and its JMLDIRECT.com web

26  site in the video." (Compl. ¶ 9.) Plaintiff does not explain how this website, which

27  only services British and Irish customers, only accepts payment in Pounds Sterling

28  and Euros, and only accepts orders to addresses within the U.K. or Ireland, is

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

21

1    plausibly connected to the United States.  (Decl. ¶ 5.)

2    In fact, the Complaint repeatedly emphasizes JML's exclusively European

3    territory, noting its address in London (Compl. ¶ 2); that "JML is a marketing and

4    distribution company in England" (Compl. ¶ 6); that "JML was given the

5    opportunity to market and distribute a segment of the MAGIC BULLET line of

6    products in parts of Europe" (Compl. ¶ 6); that "Homeland's management agreed

7    to enter into a Distribution Agreement with JML for selected MAGIC BULLET

8    lines within a limited territory in Europe" (Compl. ¶ 6); and that "Homeland

9    provided JML with its infomercials for use by JML to advertise and promote the

10   BULLET products in JML's territory in parts of Europe" (Compl. ¶ 14).

11   Plaintiff's unrelated allegations that JML has used "American

12   telecommunications to promote such infringing sales" are far too remote to make

13   out a colorable claim of copyright infringement in the United States and, more

14   importantly, far too vague to meet the pleading standards of this jurisdiction.

15   JML's television networks cannot be legitimately accessed outside of the

16   United Kingdom and that it has never brought or displayed any Magic Bullet items

17   or paraphernalia when attending trade shows in the United States.  (Decl. ¶ 4, 8.)

18   **C.    The Complaint Fails to Allege a Claim of Unfair Competition**

19   **Under Cal. Bus. & Prof. Code § 17200.**

20   The extraterritorial nature of JML's trade in the Magic Bullet blenders

21   prevents Plaintiff from stating a claim under §17200.  California's unfair

22   competition remedy is inapplicable to conduct by a nonresident defendant

23   occurring outside California.  *See Fontenberry v. MV Transp., Inc.*, No. 12-cv-

24   01996 TLN-EFB, 2013 WL 6182587, at *3 (E.D. Cal. Nov. 25, 2013) ("[T]he

25   UCL reaches any unlawful business act or practice committed *in California*"

26   (emphasis in original).); *McKinnon v. Dollar Thrifty Auto. Grp., Inc.*, No. 12-4457

27   SC, 2013 WL 791457, at *4-6 (N.D. Cal. Mar. 4, 2013) (holding that the § 17200

28   "cannot" apply to out-of-state activity regardless of the California residency of

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

22

1 │ plaintiffs).

2 │ 　　　Plaintiff has failed to allege any conduct amounting to trademark

3 │ infringement within the borders of the United States, let alone California.  Further,

4 │ "state common law claims of unfair competition and actions pursuant to California

5 │ Business and Professions Code § 17200 are substantially congruent to claims made

6 │ under the Lanham Act." *Denbicare U.S.A., Inc. v. Toys "R" Us, Inc.*, 84 F.3d

7 │ 1143, 1152 (9th Cir.1996), *abrogated in part by Kirtsaeng v. John Wiley & Sons,*

8 │ *Inc.*, 133 S. Ct. 1351 (2013); *see also Aurora World, Inc. v. Ty Inc.*, 719 F. Supp.

9 │ 2d 1115, 1165-66 (C.D. Cal. 2009); *E.S.S. Entertainment 2000, Inc. v. Rock Star*

10 │ *Videos, Inc.*, 444 F. Supp. 2d 1012, 1049 (C.D. Cal. 2006).  Because dismissal of

11 │ the Lanham Act claims is proper, the Court should also dismiss the pendant

12 │ California state law claim.

13 │ **VI.   <u>CONCLUSION</u>**

14 │ 　　　Plaintiff has filed this lawsuit in a grossly inconvenient and inappropriate

15 │ forum, justifying dismissal of the case on the grounds of *forum non conveniens*;

16 │ Plaintiff has failed to establish subject matter jurisdiction for the claim which it has

17 │ tried to plead under the Lanham Act and under the related California statute; and

18 │ Plaintiff has failed to state a cause of action under the Copyright Act and under

19 │ Cal. Bus. & Prof. Code §17200.  Consequently, JML respectfully requests that the

20 │ Complaint be dismissed in its entirety without leave to amend.

21 │

22 │

23 │ Dated:  March 11, 2014　　　　　　　　VENABLE LLP

24 │ 　　　　　　　　　　　　　　　　By:  /s/ Gregory J. Sater
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　_____

25 │ 　　　　　　　　　　　　　　　　　Gregory J. Sater, Esq.
　　　　　　　　　　　　　　　　Attorneys for Defendant

26 │ 　　　　　　　　　　　　　　　　JOHN MILLS, LTD.

27 │

28 │

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900